UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHON TALAVERA, on behalf of himself and on behalf of all other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>LEPRINO FOODS COMPANY and LEPRINO FOODS DAIRY PRODUCTS COMPANY,<br><br>Defendants. | Case No.  1:15-cv-105-AWI-BAM<br><br>**ORDER ON PLAINTIFF'S MOTION FOR CORRECTIVE NOTICE AND EXTENDING CLASS DISCOVERY DEADLINE** |

### I.   INTRODUCTION

Before the Court is Plaintiff's Motion for Corrective Notice to alleviate damage related to Defendants Leprino Foods Company and Leprino Foods Dairy Products Company ("Leprino" or "Defendants") allegedly improper communications to the putative class. (Doc. 34).  Defendants filed their opposition to the Motion on February 12, 2016; to which Plaintiff replied on February 18, 2016.  (Docs. 44, 46).  The Motion was heard on February 26, 2016, before United States Magistrate Judge Barbara A. McAuliffe. Counsel Philip Downey appeared in person on behalf of Plaintiff.  Counsel Sandra Rappoprt appeared in person on behalf of the Defendants.  Having considered the motion, argument presented at the hearing, as well as the Court's file, Plaintiff's

Motion for Corrective Notice is GRANTED in PART and DENIED in part.

## II. FACTUAL & PROCEDURAL BACKGROUND

### A. Overview of the Facts

Plaintiff Jonathon Talavera ("Plaintiff") filed the instant putative class action in this Court on January 21, 2015, alleging that Leprino violated the Labor Code and state law by failing to: pay overtime wages, compensate for pre-shift and post-shift donning and doffing, and failing to provide "legally compliant" meal and rest breaks. Plaintiff seeks to certify a class pursuant to Federal Rule of Civil Procedure 23; however, no motions regarding certification have been filed and a class has not been certified.

Plaintiff's motion arises out of an assertion that Leprino engaged in misleading and coercive communications with potential class members at six individual plant-wide meetings held on January 5, 2016 at the Lemoore West Facility.

### B. Nature of the Communications

As a Plant Manager and Leprino Vice President, Robert Tuttrup holds monthly plant-wide meetings to provide information to employees about the plant and to field questions and requests for information. *See* Declaration of Robert Tuttrup ("Tuttrup Decl."), Ex. 2 (Doc. 34-2 at 18). On January 5, 2016, Mr. Tuttrup held six separate plant-wide meetings at the Lemoore West Facility. All hourly workers scheduled to work were required to attend the meeting. Leprino alleges that at the January 5, 2016, meetings Mr. Tuttrup briefly addressed the underlying lawsuit. While Mr. Tuttrup did not use the same exact words or make his comments in exactly the same order during each presentation his comments related to the lawsuit generally included the following information in each presentation:

(1) employees may be receiving a call from an attorney who is representing a former employee in a dispute involving donning and doffing and the company's pay practices for breaks and lunches;

(2) Leprino believes employees have been paid fairly;

(3) Plaintiff's counsel is attempting to form a class of other employees;

(4) Plaintiff's counsel should be telling the employees who he is, that there is no

obligation to speak with him, and that Sandra Rappaport of Hanson Bridgett represents the company, and Mr. Tuttrup would be interested to know if the attorney is not saying those three things to the employees;

(5) employees are free to decide for themselves whether they wish to speak with the attorney or not, and there will be no consequences for their employment either way;

(6) if employees do decide to speak with the attorney please tell the truth;

(7) if false written or oral statements are made to the court, that can be considered perjury; and

(8) Mr. Tuttrup and the company's counsel are available to answer any questions, but there is no obligation to talk with the company's counsel either. Tuttrup Decl. at ¶ 4.[1]

**C.  Parties' Positions**

The parties disagree sharply on the communications that took place leading up to and during the series of plant-wide meetings. Plaintiff describes a coercive speech given by Mr. Tuttrup threating workers with criminal perjury prosecutions if they gave inaccurate statements as members of the putative class. In support of these allegations, Plaintiff submitted the declaration of Josie Balderama, a current Leprino employee at the Lemoore West Facility. *See* Declaration of Josie Balderama ("Balderama Decl."), Ex. 2 (Doc. 34-2 at 18).  Ms. Balderama states that at the January 5, 2016, meeting, Plant Manager Robert Tuttrup warned the attendees that they might be receiving calls from Plaintiff's attorneys and then threatened all hourly workers/percipient witnesses with the prospect of being charged with perjury if there was anything false in their sworn declarations. He further advised workers to come and see him if they spoke with Plaintiff's attorneys because he wanted to know what was said to them and further advised that the case was not a class action. Balderama Decl. ¶ 18.  Mr. Tuttrup never explained the definition of perjury, nor what erroneous statements might rise to the level of perjury.  Ms. Balderama stated specifically:

---

[1] *See also* Declaration of Shawna Emery, ("Emery Decl.") at ¶ 8, (Doc. 44-3); Declaration of Daniel Williamson, ("Williamson Decl.") at ¶4 8, (Doc. 44-5); Declaration of Donald Doyle, ("Doyle Decl.") at ¶ 5, (Doc. 44-4).

3

> Last Tuesday, January 5th, the Plant Manager, Robert Tuttrup had an all plant meeting concerning attorneys contacting workers about this lawsuit against Leprino. He said it is only one person suing Leprino and that it is not yet a class action. He told workers to let him know if they were called because he would like to know what was said to them. Robert Tuttrup said threateningly that any worker who signs a statement better make sure that it is the truth because if it is not it is a Federal offense and that the worker could be held accountable. All scheduled workers on my shift were required to attend this meeting at pre shift.

Balderama Decl. ¶ 18.

Plaintiff moves this Court to issue a notice to all potential class members correcting the alleged misrepresentations that Leprino made to prospective class members as well as other requested relief.

Leprino's version of events paints a decidedly different picture. According to Leprino, prior to the January 5, 2016, plant-wide meeting managers at Leprino's Lemoore West facility received several questions from employees regarding why Plaintiff's counsel was calling them at their homes. Plant Manager Robert Tuttrup then addressed the issue briefly at the regularly scheduled plant-wide meeting of employees on January 5, 2016. During the last two to five minutes of a 50-minute presentation on unrelated matters, Mr. Tuttrup gave information about the phone calls—he explained who Plaintiff's counsel was and what the lawsuit alleged, told the employees it was their choice whether or not to speak with Plaintiff's counsel, asked employees to tell the truth if they chose to do so, and explicitly stated that employment would not be affected by any employees choice to speak with Plaintiff's counsel.

In addition, in some of the meetings, employees asked how counsel for Plaintiff received their contact information, and Mr. Tuttrup explained that while normally Leprino would not share their personal contact information, in this case Leprino was required to turn over the contact information in connection with the lawsuit. Tuttrup Decl. at ¶ 4; *see also* Williamson Decl. at ¶ 5. In some of the meetings, Mr. Tuttrup also told the employees that there have been no decisions made in the case about liability or money owed. Tuttrup Decl. at ¶ 4.

Leprino explains that it specifically asked employees to report on whether Plaintiff's counsel was being upfront about who he is and his relationship to this case, because the Protective Order entered by this Court requires Plaintiff's counsel to make those statements when he calls Leprino employees, and Leprino is entitled to know whether counsel is abiding by that Order.

4

(Doc. 44 at 11-12); see also (Doc. 30 at 12-13).

Defendants also submitted the declarations of Leprino managers Kes Andersen, Shawna Emery, Donald Doyle, Daniel Williamson, Ryan Rocha, Robert Tuttrup and Kim Miller, who all stated that Mr. Tuttrup only briefly touched on the subject of the instant lawsuit and no statements were coercive, threatening or intimidating.

Based on these limited comments, Leprino contends that its conduct at the plant-wide meeting was not improper, misleading, or inherently coercive and that Mr. Tuttrup accurately and fairly summarized the lawsuit and its potential effect on the employees. Leprino asks the Court to deny Plaintiff's attempt for a "court-sanctioned" opportunity to change the minds of Leprino employees who do not wish to speak to Plaintiff's counsel." (Doc. 44 at 6).

**B.    Relief Requested**

Plaintiff moves for a number of curative measures to remedy the alleged harm caused by Leprino's allegedly threatening and misleading communications with its workers including:

(1) A corrective notice mailed to potential class members and posted in numerous locations at the Lemoore West facility;

(2) Private interviews with Leprino employees;

(3) A list of all employees who attended the January 5, 2016 plant-wide meeting;

(4) Sanctions requiring Defendants to provide restitution to every potential class member, regardless of whether they file an opt-out form;

(5) Monetary sanctions for preparation of the motion and related investigations; and

(6) A 90-day extension of the fact discovery deadline.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 23(d) provides that "the court may issue orders" that "require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of any step in the action," "impose conditions on the representative parties," or "deal with similar procedural matters." Fed. R. Civ. P. 23(d)(1). "Subdivision (d) is concerned with the fair and efficient conduct of the action . . . ." Fed. R. Civ. P., Adv. Comm.

5

Notes.

"Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981). In particular, a district court has the power to "limit[] communications between parties and potential class members." *Id.* at 101. *Gulf Oil* noted the "obvious potential for confusion" and adverse effect on the "administration of justice" that misleading communications may cause. *Id.* at 100 n. 12 (quoting *Waldo v. Lakeshore Estates, Inc.*, 433 F.Supp. 782 (E.D. La. 1977)). The prophylactic power accorded to the court presiding over a putative class action under Rule 23(d) is broad; the purpose of Rule 23(d)'s conferral of authority is not only to protect class members in particular but also to safeguard generally the administering of justice and the integrity of the class certification process.

> A district court's duty and authority under Rule 23(d) to protect the integrity of the class and the administration of justice generally is not limited only to those communications that mislead or otherwise threaten to create confusion and to influence the threshold decision whether to remain in the class. Certainly communications that seek or threaten to influence the choice of remedies are . . . within a district court's discretion to regulate.

*In re Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988). In *Wang v. Chinese Daily News*, *Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), *judgment vacated on other grounds*, 132 S. Ct. 74, 181 L. Ed. 2d 1 (2011), the Ninth Circuit similarly noted, "Rule 23(d) gives district courts the power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation."

## IV.   DISCUSSION

Plaintiff argues that Leprino's communications with the putative class were improper because: (1) Mr. Tuttrup threatened employees with the prospect of being charged with perjury if employees gave statements to Plaintiff's counsel; (2) Leprino asked employees to share the details of their communications with Plaintiff's counsel; (3) Leprino stated that they believe employees had been paid fairly; and (4) Leprino falsely stated that Plaintiff is trying to form

another class of employees.[2]

### A.     Threats of Perjury

The Court focuses on Plaintiff's argument that Leprino's comments about perjury were threatening, misleading, and likely to chill participation in the class. (Doc. 34 at 6). Among other relief requested, Plaintiff requests the Court order Defendants to disseminate a corrective notice to remedy Leprino's threats of perjury. Plaintiff argues that a corrective notice is particularly warranted because Plaintiff is now tasked with gathering sworn declarations from putative class members who fear criminal prosecution if they participate. According to Plaintiff, as a result of Leprino's misleading comments, Plaintiff and the putative class have been placed at a decided disadvantage in gathering declarations from workers who wrongly believe that any erroneous statement could result in criminal charges for perjury. (Doc. 34 at 7).

Relying primarily on *Kleiner v. First National Bank,* Plaintiff argues that Leprino's unilateral communications and coercive conduct were designed to influence class members to exclude themselves from the lawsuit. *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985). In *Kleiner*, the Eleventh Circuit upheld a district court's invalidation of opt-out forms obtained through *ex parte* phone calls to the defendant bank's customers. The Court noted that "[w]hen confronted with claims pressed by a plaintiff class, it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests . . . [s]uch conduct reduces the effectiveness of the 23(b)(3) class action for no reason except to undermine the purposes of the rule." *Id.* at 1202-03. The Eleventh Circuit recognized that in an employer-employee relationship, the risk of coercion and abuse is particularly high when an employer solicits opt-outs from employees. *Id.* Setting aside the fact that Leprino did not solicit opt out forms or written declarations excluding employees from the

---

[2] Although Plaintiff challenges several aspects of Mr. Tuttrup's comments, the Court limits its analysis to potential concerns raised by Mr. Tuttrup's perjury warnings as they carry the greatest likelihood to chill participation in the putative class. The remainder of Mr. Tuttrup's comments with respect to Leprino's request for information about the phone calls and Leprino's beliefs about the merits of the lawsuit did not mischaracterize or otherwise undermine the rights of the putative class. For that reason, the Court only addresses Mr. Tuttrup's comments about perjury.

class, Plaintiff here contends that Leprino's implicitly threatening statements had a similarly chilling effect as found in *Kleiner*.

In response, Defendants assert that the perjury comments made by Mr. Tuttrup were truthful and not made with the intent to influence or intimidate workers from participating in this putative class action. According to Leprino, Plaintiff makes much of Mr. Tuttrup's use of the word "perjury" but those comments are not sufficiently coercive or misleading to warrant corrective notice. Defendants rely on *Gerlach v. Wells Fargo & Co.*, where the Northern District refused to issue corrective notice when the conduct was not sufficiently misleading or coercive. In *Gerlach v. Wells Fargo & Co.*, 2006 WL 824652, at *7 (N.D. Cal. Mar. 28, 2006), the Court denied the plaintiffs' motion for a corrective notice where the defendant employer sent a Q & A document to putative class members informing them, among other things, that it is their decision whether to speak to any lawyer that contacts them and that, if they decide to speak to Plaintiffs' attorneys, they will not be retaliated against, reiterating that their jobs will not be affected by participating in the lawsuit or by speaking to the plaintiffs' counsel, and to speak with their manager or an HR representative if they want to learn more about the lawsuit. The Court found that the Q&A document was "not inherently misleading or coercive," and "that sending the corrective notice prepared by Plaintiffs is not necessary." *Id*.

Whether a communication is misleading or coercive—and therefore warrants judicial intervention—often depends not on one particular assertion, but rather the overall message or impression left by the communication. *See Bobryk v. Durand Glass Manufacturing Co.*, No. 12-CV-5360, 2013 U.S. Dist. LEXIS 145758, 2013 WL 5574504, at *5-6 (D.N.J. Oct. 9, 2013) (noting "the absence of a bright-line rule controlling pre-certification communications" requires courts to "assess[] whether the factual circumstances surrounding ex parte communications warrant the imposition of restrictions on speech"). A Court therefore "must examine 'the context in which the communications were made and the effect of the communications' in determining whether, and how much, communication should be restricted." *Stransky v. HealthONE of Denver, Inc.,* 929 F. Supp. 2d 1100, 1108-09 (D. Colo. 2013) (finding defendants' misleading statements about potential monetary consequences of outcome "likely to confuse, if not coerce").

The context here is of particular concern, as an employment relationship exists between the parties, which itself may increase the risk that communications will have a coercive effect. *See, e.g. Camp v. Alexander*, 300 F.R.D. 617, 624 (N.D. Cal. 2014) ("The caselaw nearly universally observes that employer-employee contact is particularly prone to coercion"). Here, the mandatory nature of the meetings, the fact that they were conducted at the workplace during working hours, and the linking of the lawsuit with the possibility of criminal perjury charges created a risk of coercion and potential for chilling participation. Regardless of Mr. Tuttrup's true intent, his role as the head onsite manager can transform suggestions, requests, or observations into directives or threats. *Id.*

Not only is the context of Mr. Tuttrup's comments of particular concern, the specific words here matter. While Defendants argue that the language used at the meeting was neutral, the term "perjury" carries an additional connotation that participation in this legal proceeding could result in a criminal charge. In his comments, Mr. Tuttrup did not expound on the definition of perjury nor did he explain that mistakenly untruthful statements are not criminal. A person unfamiliar with the legal process is likely unaware that while the crime of perjury can be committed in both civil and criminal cases, perjury prosecutions arising from civil lawsuits are extremely rare. Further, Leprino employees are likely similarly unaware that for a false statement made under oath to be considered perjury it must (1) be in regard to a material or pertinent fact in the case and (2) must be an intentional misrepresentation. 18 U.S.C.S § 1621.

Ultimately, the negative connotation associated with the term perjury here essentially nullifies any benign motivations Mr. Tuttrup may have had when giving his speech. Mr. Tuttrup's statements while not necessarily untrue were misleading because they could cause employees to believe that their mere participation made them vulnerable to criminal action. No matter Mr. Tuttrup's intent, the Court cannot ignore the grave concerns raised by Mr. Tuttrup's foreshadowing of potential criminal action particularly in the employer-employee context. Thus, the Court finds that remedial measures are warranted.

Further, despite Leprino's contention otherwise, the authority cited by Defendants does not persuade the Court that corrective notice is inappropriate here. At first glance, Mr. Tuttrup's

use of the word perjury may not appear to be as egregious as the language used in many of the cited cases, however, threats of negative repercussions from a class members' participation in a class is precisely the type of conduct those cases seek to discourage. For example, in *Camp*, the Defendant employer gave threatening statements in a letter to employees repeatedly asserting that if the lawsuit continues because employees participate in it, the business will close and the employees will lose their jobs. 300 F.R.D. at 620-624. The Court found Defendants' letter coercive as result of its "multiple predictions that the lawsuit, if successful, will cause the practice to close" with the obvious consequence that employees would suffer serious consequences. *Id.* at 624.

Similarly in *Mevorah v. Wells Fargo Home Mortgage, Inc.*, 05-cv-1175 MHP, 2005 U.S. Dist. LEXIS 28615, 2005 WL 4813532, *3 (N.D. Cal. Nov. 17, 2005), the Defendant, through counsel, advised potential plaintiffs that the lawsuit sought to have the potential plaintiffs' positions changed to become eligible for overtime rather than the present exempt commission-based structure, which may result in "a system of time-monitoring, payment of overtime, as well as some lunch period regulation." 2005 U.S. Dist. LEXIS 28615, 2005 WL 4813532, at *4. The Court found that this communication "could easily give a potential class member the mistaken impression that if the lawsuit were successful, [potential plaintiffs] would be paid on an hourly basis instead of by commission." *Id.*

Both cases involve misleading employees into believing that their participation will result in negative consequences because of their participation. That same scenario is presented here. Leprino's statements about perjury in relation to the putative class action had the potential to mislead employees into believing that participation could lead to criminal prosecution; an outcome so unlikely that the Court cannot conclude that its inclusion was less than threatening. Moreover, the relationship between Defendants and their employees increases the potential harm from such misinformation. Taken as a whole, therefore, the comments by Mr. Tuttrup have the potential to chill participation and must be corrected.

Finally, even more troubling here, is the fact that the declarations filed by Leprino employees contradict representations made by Mr. Tuttrup's own admission. Mr. Tuttrup

admitted in his deposition testimony that he threatened percipient witnesses at the plant wide meetings with the possibility of being charged with perjury if they gave false statements.  Mr. Tuttrup stated:

[A]:   "I said that if the situation went to court and they provided written documentation that was later found to be false, it was in a court of law and they could be subject to perjuring themselves in a court of law.  I explained to them that it was important that they told the truth
[Q]:   Uh-huh.
[A]:   —because there could be repercussions. Perjury was the word I used—
[Q]:   Okay. — if it was later found out that they didn't tell the truth.

Tuttrup Depo at p. 21, Doc. 34-1.

Even though Mr. Tuttrup confessed to warning employees about perjury considerations on several occasions, the declarations filed by Leprino management never mention the word perjury. This apparent dilution of Mr. Tuttrup's statements further supports the Court's decision that a corrective notice must issue here.

Overall, "the critical question [for the Court] is whether there is a realistic danger that the communications will chill participation in the class action." *Wright v. Adventures Rolling Cross Country, Inc*., 2012 WL 2239797, 2012 U.S. Dist. LEXIS 83505 (N.D. Cal. June 15, 2012). Plaintiff has established that, at the very least, Defendants' communications were improper because they plausibly could have a chilling effect on participation in the class action. For the identified reasons, the Court determines that a corrective notice addressing Mr. Tuttrup's perjury comments is narrowly tailored relief that would protect the respective parties. *Gulf Oil*, 452 U.S. at 102

**B.     Plaintiff's Other Requested Forms of Relief**

Plaintiff's remaining requests for relief including private meetings with Leprino employees and monetary sanctions for the class is DENIED.  Although the Court is troubled that Defendants' comments could chill participation in the class, the Court believes the curative notice should be sufficient to mitigate any harm in this case.

Regarding the request for disclosure of all communications between Defendants and

11

putative class members, the Court finds that it is not necessary to order such disclosure at this time. Defendants have produced their PowerPoint presentations as well as several supporting declarations accounting for the statements made at the meeting. Further, there is no evidence that additional written communications exist beyond the PowerPoint presentation. Therefore, it appears there is nothing for Defendants to produce at this time.

Finally, regarding Plaintiff's request for sanctions, such requests must be made by separate motion. Fed. R. Civ. P. 11(c)(2). Plaintiff did not separately move for sanctions and therefore, the Court will not consider Plaintiff's request at this time. However, Plaintiff may address the motion for sanctions at a later date.

### C. Post Hearing Meet and Confer

At the February 26, 2016 hearing for the underlying motion, the Court ordered the parties to meet and confer and submit a joint proposed corrective notice to the Court on or before March 4, 2016. The Court also set a March 7, 2016, status conference to finalize the format of the proposed notice, where the notice will be posted, and whether to extend the class discovery deadline. At the status conference, the Court reviewed the stipulated corrective notices. The parties discussed a minor dispute as to the content of the proposed notice. The Court struck the disputed language proposed by Plaintiff's counsel and agreed to format the final corrective notice. The Court also heard arguments and viewed photos of suggested locations where Defendants could place the corrective notice within the Lemoore West Facility.[3] After hearing arguments from counsel, the Court finds that the secured glass case suggested by Defendants' counsel and referred to as the "Informational Board" is the most appropriate place to post the corrective notice. Accordingly, Leprino shall post the following corrective notice as instructed by the Court.

### D. Corrective Notice

The corrective notice shall be formatted substantially as follows in Exhibit A.

## V. CONCLUSION AND ORDER

For the reasons explained above, Plaintiff's Motion for a Corrective Notice is GRANTED IN PART AND DENIED IN PART. The Court further ORDERS as follows:

---

[3] Each side emailed to the court and opposing counsel photographs of proposed "bulletin board" locations.

1. The Court Authorized Corrective Notice will be posted in two locations at the Lemoore West Facility including: (1) on the secured "Informational Board" case located in the hallway near the Kronos employee time clocks; and (2) Leprino will also direct employees to the court-authorized notice posted on the "Informational Board" using their "scrolling" electronic bulletin board located in the meal/break rooms. The summarized notice, on the electronic bulletin board, will state "Court-Authorized Corrective Notice. See Informational Board;"

2. The Corrective Notice SHALL be printed on a single letter sized (8.5 x 11 inches) light yellow piece of paper with black lettering.

3. The Corrective Notice SHALL remain posted in all locations from March 15, 2016 through May 13, 2016;

4. On March 29, 2016, the date scheduled for the next plant-wide meeting at the Lemoore West Facility, Mr. Tuttrup shall direct employees' attention to the corrective notice located on the "Informational Board." Mr. Tuttrup SHALL also recite a corrective statement detailed as follows:

> The corrective notice has been posted to correct any possible misunderstandings as a result of the discussion of the lawsuit at the January 5, 2016, all plant meeting. Please read the Notice. The Notice may be read without fear of retaliation.

A copy of the Corrective Notice will be included as a slide in the PowerPoint and shown as Mr. Tuttrup makes his statement;

5. Plaintiff's request to modify the scheduling order is GRANTED IN PART and DENIED IN PART without prejudice as follows:

   (a) Class Discovery is extended 45 days from March 29, 2016, to permit Plaintiff to conduct investigation/contacts with employees. Plaintiff may not recontact any employee contacted before Jan 5, 2016, who indicated that they were not interested in speaking with Plaintiff's counsel;

   (b) Plaintiff's request to extend fact discovery to conduct additional written discovery and depositions is DENIED without prejudice;

      (c)    Plaintiff's request to extend the expert discovery cutoff is DENIED without prejudice;

6.    Based on the Court's rulings, the preliminary scheduling order is modified to the following dates:

| | |
|---|---|
| Non-Expert Discovery Cutoff: | May 13, 2016 |
| Expert Disclosure: | February 15, 2016 |
| Supplemental Expert Disclosure: | February 29, 2016 |
| Expert Discovery Cutoff: | April 11, 2016 |
| Class Certification Filing Deadline: | June 17, 2016 |
| Class Certification Opposition: | July 15, 2016 |
| Class Certification Reply: | July 29, 2016 |
| Class Certification Hearing: | August 12, 2016<br>Time:  9:00 a.m.<br>Dept:  8(BAM) |

7.    In the event that a discovery dispute arises prior to the fact discovery cutoff, counsel is strongly encouraged to utilize the Court's informal discovery dispute resolution process. Handling matters informally ensures that they are addressed in a timely manner.

IT IS SO ORDERED.

Dated: **March 8, 2016**                         /s/ Barbara A. McAuliffe
                                                            UNITED STATES MAGISTRATE JUDGE

# Exhibit A

# COURT-AUTHORIZED CORRECTIVE NOTICE

*Jonathan Talavera on behalf of himself and all other similarly situated individuals*
*v.*
*Leprino Foods*
**CASE NO. 1:15-cv-00105-AWI-BAM**

The court has authorized corrective notice to correct any possible misunderstandings as a result of attending plant-wide meetings with management.

## BACKGROUND/ALLEGATIONS

This case was filed by Jonathan Talavera, as a class action on behalf of himself and all current and former hourly workers who worked at Leprino at any time between January 21, 2011 and the present. The court has not made any decision as to whether the case may proceed as a class action. Talavera has alleged that Leprino has failed to pay workers for all hours worked, failed to pay overtime wages, failed, at times, to offer legally-compliant meal and rest periods, and failed to pay appropriate penalty pay, and failed to pay all wages owed, including penalty pay, upon termination of employment. Leprino has denied all of the claims. The court has not made any findings in this matter.

## PERJURY

Leprino has no authority to charge workers with perjury. Only a court can decide if witnesses have perjured themselves. Witnesses can only be charged with perjury if they deliberately provide untrue written or oral testimony under oath to a court. Witnesses will not be charged with perjury for merely talking with the plaintiff's attorney, or from unknowingly making a mistake of fact in a written declaration or in oral testimony to a court.

## RETALIATION IS PROHIBITED

Hourly workers at Leprino may give sworn declarations or testify against Leprino without fear of being fired, denied promotion or harassed. Likewise, hourly workers working at Leprino through Placement Pros may not be harassed or denied other work opportunities if they choose to testify against Leprino or provide a written declaration concerning their work experience.

## COMMUNICATIONS WITH ATTORNEYS

It is your choice whether to communicate with the attorneys representing the plaintiff or Leprino. Hourly workers wishing to speak with attorneys for plaintiff and the putative class, The Downey Law Firm, LLC, Philip A. Downey, may do so by calling 610/324-2848. Workers wishing to speak with attorneys for Leprino, Hanson Bridgett, LLP, Sandra Rappaport, may do so by calling 415/777-3200. Leprino's attorneys do not represent the putative class members in this matter.